IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VERNON SUZUKI, ) | CIVIL NO. 19-00627 SOM-WRP |
| ) | |
| ) | ORDER DENYING DEFENDANTS' |
| Plaintiff, ) | MOTION TO DISMISS, OR IN THE |
| ) | ALTERNATIVE, TO STAY CASE |
| ) | PENDING ARBITRATION |
| vs. ) | |
| ) | |
| ) | |
| BICKERTON LAW GROUP, LLLP, ) | |
| f/k/a BICKERTON DANG LLLP, a ) | |
| Hawaii limited liability ) | |
| partnership; JAMES J. ) | |
| BICKERTON, an individual; and ) | |
| STEPHEN M. TANNENBAUM, an ) | |
| individual ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

ORDER DENYING DEFENDANTS' MOTION TO DISMISS, OR IN THE
ALTERNATIVE, TO STAY CASE PENDING ARBITRATION

**I.      INTRODUCTION.**

This is a legal malpractice case. Defendants Bickerton Law Group, James J. Bickerton, and Stephen M. Tannenbaum ask this court to dismiss or stay this case because a concurrent arbitration might resolve some of the issues raised by this action. The arbitration involves Defendants' claims that Plaintiff Vernon Suzuki failed to pay some of their fees. Defendants anticipate that Suzuki will raise their alleged malpractice as a defense to their fee claims.

Defendants request a stay or dismissal on four different grounds, only one of which (*Colorado River* abstention)

even arguably might apply here, although this court does not ultimately abstain under *Colorado River*. *Colorado River* permits a federal court to abstain in favor of a concurrent state proceeding if that proceeding will resolve the entire dispute between the parties. *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). While the ongoing arbitration might resolve certain issues in this case, it might not necessarily resolve all of them. Accordingly, abstention under *Colorado River* is not warranted.

**II.     BACKGROUND.**

This case arises out of alleged legal malpractice committed by Defendants in *Vernon Suzuki v. Helicopter Consultants of Maui, Inc. dba Blue Hawaii Helicopters et al.*, an action filed by Suzuki in federal district court in 2013. Defendants represented Suzuki in the 2013 action, in which Suzuki sued Blue Hawaiian Helicopters for damaging his property when a helicopter piloted by one of Blue Hawaiian's employees crashed on his property. *See* ECF No. 1, PageID # 3-5. According to Suzuki, he had to pay to clean up debris, lost the full use of his property, had his soil contaminated, and saw the value of his property fall because of the stigma associated with the crash. *Id.* at 4-5, 8-9. To quantify his damages, Suzuki needed expert testimony.

Expert witness disclosures were due on February 8, 2016. *Id.* at 6. According to Suzuki, Defendants spent no time on expert disclosures until February 5, 2016, when they asked the court to extend the deadline. *Id.* The court denied the request and precluded Suzuki's experts from testifying given Defendants' failure to comply with the expert witness provisions in the Federal Rules of Civil Procedure. *Id.* at 9.

According to Defendants, they then advised Suzuki that they had to withdraw as counsel because of the possible conflict between their duty to zealously represent Suzuki and their own interest in avoiding a malpractice claim. ECF No. 33-3, PageID # 174-75. Defendants assert that, after consulting with independent counsel, Suzuki agreed to waive any claims against Defendants related to the expert reports in return for billing credit. *Id.* at 175. Suzuki allegedly insisted that the agreement not be put in writing and instead be a "'handshake' agreement based on mutual trust." *Id.*

Defendants represented Suzuki during the helicopter trial, and Suzuki prevailed on his claims against Blue Hawaiian Helicopters. The jury awarded him approximately $161,050 in compensatory damages and punitive damages. *Id.* Suzuki asserts that he would have received an additional $1.5 million if he had been able to offer expert testimony. *See* ECF No. 1, PageID # 9-10.

After the 2013 action concluded, Defendants attempted to hold Suzuki to what they said he had agreed to with respect to continuing to pay their bills. They sent Suzuki a bill for more than $568,076.42. ECF No. 33-3, PageID # 176. Apparently thinking that he had a viable malpractice claim against Defendants, Suzuki refused to pay.

The parties had agreed to arbitrate fee disputes. On June 14, 2018, Defendants therefore commenced arbitration proceedings seeking to recover the fees they believed they were owed. *See id.* Suzuki refused to arbitrate unless Defendants allowed him to bring affirmative malpractice claims in the same proceeding. Defendants did not acquiesce, instead filing a motion to compel arbitration in the First Circuit Court of the State of Hawaii. *Id.* That motion asked the state court to compel arbitration of the fee dispute, and to preclude Suzuki from raising his affirmative malpractice claims in the arbitration.

On January 8, 2019, the state court granted Defendants' motion. It ordered Suzuki to attempt to mediate the fee dispute, and, if mediation failed, to arbitrate. The court held that the arbitration "shall not include any affirmative damages counterclaims by [Suzuki], including ones for malpractice." ECF No. 39-2, PageID # 335. The state court also said hat "nothing in this Order prevents [Suzuki] from pursuing any affirmative

claims he believes he may have against [Defendants] in a malpractice action in court."  *Id.*

By November 14, 2019, mediation had failed.  *See* ECF No. 39, PageID # 266.  The parties then selected retired Hawaii Supreme Court Justice James R. Duffy Jr. as their arbitrator and began an arbitration, although it appears that little progress has been made.  There was a dispute over whether Suzuki's counsel could appear *pro hac vice* in the arbitration.  The result was that nothing substantive occurred in the arbitration until Suzuki's counsel entered an appearance on April 13, 2020.  *See id.*  On April 15, 2020, Suzuki moved to stay the arbitration in favor of this action.  That motion appears to be pending.

On November 18, 2019, shortly after mediation had failed, Suzuki filed this action.  His complaint included a claim for professional negligence (Count I) and a claim for breach of contract (Count II).  ECF No. 1, PageID # 12-13.  Both counts appear to be based on Defendants' alleged malpractice.  On April 24, 2020, a little more than a week after Suzuki moved to stay the arbitration, Defendants filed this motion to either dismiss this action or to stay it pending arbitration.

**III.    ANALYSIS.**

Defendants maintain that this action should be dismissed or stayed under four separate legal theories.  They argue that (1) the case should be dismissed under *Rooker-Feldman*;

5

(2) this court should dismiss this action or abstain from hearing it under *Colorado River*; (3) this court, under the *Landis* doctrine, should exercise its broad discretion to stay proceedings as incident to its power to control its own docket; or (4) this court should issue a stay under 9 U.S.C. § 3.  The court does not order dismissal, abstention, or a stay under any of those doctrines.

> **A.   *Rooker-Feldman* does not apply because Suzuki is not before this court with a *de facto* appeal of a state court decision.**

Under the *Rooker-Feldman* doctrine, a federal district court cannot exercise subject-matter jurisdiction over a direct appeal from the final judgment of a state court.  *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003).  While it is not clear that the state court's order compelling arbitration is a final judgment, this court need not reach that issue, because Suzuki is not here appealing any state court order.  Suzuki did exactly what the state court said he could do: he filed an independent malpractice action.  *Rooker-Feldman* does not prevent this court from deciding his claims.

"To determine whether the *Rooker–Feldman* bar is applicable, a district court first must determine whether the action contains a forbidden *de facto* appeal of a state court decision."  *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013).  "A *de facto* appeal exists when a federal plaintiff

6

asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Id.* (quotation marks omitted). "In contrast, if a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction."[1]  *Id.* (quotation marks omitted).

For instance, if a plaintiff alleges that a state court erroneously ordered him to pay money, or erroneously issued an injunction against him, *Rooker-Feldman* bars federal jurisdiction. *See Noel*, 341 F.3d at 1161-62 (collecting cases). Federal district courts cannot review state court decisions. But when a plaintiff is complaining about an adversary's actions, rather than about a state court ruling, *Rooker-Feldman* does not prevent a district court from hearing the case.

This action falls into the latter category. Suzuki's claims for relief are based on Defendant's alleged malpractice. Suzuki is asserting a legal wrong committed by an adverse party.

---

[1] In their opening brief, Defendants argued than an action constitutes a forbidden a *de facto* appeal if the claims raised in a federal action are inextricably intertwined with the claims addressed by a state court decision. ECF No. 33-1, PageID # 155. However, the Ninth Circuit has clarified that the "'inextricably intertwined' language from *Feldman* is not a test to determine whether a claim is a *de facto* appeal, but is rather a second and distinct step in the *Rooker-Feldman* analysis. Should the action *not* contain a forbidden *de facto* appeal, the *Rooker-Feldman* inquiry ends." *Bell*, 709 F.3d at 897 (emphasis in original); *accord Raquinio v. City of Kailua Kona*, 2019 WL 1300069, at *3-4 (D. Haw. Mar. 21, 2019).

Suzuki does not allege that the state court order compelling arbitration was erroneous, and he does not ask this court to overturn the state court's order and halt the arbitration. To the contrary, in filing this action, Suzuki is complying with that order, which expressly permitted him to file affirmative claims. *Rooker-Feldman* does not apply.

Defendants argue that Suzuki's claims constitute a *de facto* appeal of the state court's order because some of the issues raised by his complaint will be decided in the state arbitration. *See* ECF No. 41, PageID # 428-29. But, in applying the *Rooker-Feldman* doctrine, courts "cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (emphasis in original) (quotation marks omitted). Instead, courts "must pay close attention to the *relief* sought by the federal-court plaintiff." *Id.* (emphasis in original) (quotation marks omitted). Because Suzuki seeks relief from a legal wrong committed by Defendants, not the state court, *Rooker-Feldman* does not apply. *Bell,* 709 F.3d at 897. While a decision in this case could have preclusive effect in the arbitration, that does not mean that the arbitration will not go forward.

Had Defendants agreed with Suzuki's request that any arbitration encompass not only the fee dispute but also his

8

malpractice claims, there would be a single proceeding.  By declining to allow the arbitrator to hear Suzuki's legal malpractice claims, Defendants ensured an overlap of the issues in two parallel actions.  That does not mean, however, that the action before this court is an appeal of the state court's order.

>    **B.   *Landis* is inapplicable, and neither dismissal nor a stay is warranted under *Colorado River*.**
>
>    >   **1.   This court examines this case under *Colorado River*, not *Landis*.**

The parties' briefs cite two legal doctrines as alternatives: *Colorado River* and *Landis*.  Defendants argue that relief is available under either.  But *Colorado River* and *Landis* are mutually exclusive.  In *Landis v. North American Co.,* 299 U.S. 248 (1936), the Supreme Court, noting a court's discretion to issue a stay in aid of controlling its own docket, examined how to treat a party's request that a federal court issue a stay in a case and allow a matter to be resolved in concurrent *federal* litigation.  *Colorado River Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), by contrast, articulated a heightened standard applicable to a party's request that a federal court stay a federal case and permit a matter to be litigated in a concurrent *state* proceeding.

This distinction is drawn from *Colorado River* itself. In *Colorado River*, the Supreme Court recognized a "difference in general approach between state-federal concurrent jurisdiction

9

and wholly federal concurrent jurisdiction." *Colorado River,* 424 U.S. at 817-19. The Court, citing *Landis*, explained that federal courts can stay cases in favor of concurrent federal proceedings to avoid duplicative litigation. *Id.* at 817. Because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," however, a federal action can only be stayed in favor of a concurrent state action under "exceptional" circumstances. *Id.* at 817-18. Thus, "the *Colorado River* doctrine is best understood as an additional limitation on a court's inherent authority to grant a stay discussed in the *Landis* decision." *AIIRAM LLC v. KB Home*, 2019 WL 3779185, at *6 (N.D. Cal. Aug. 12, 2019).

> As Judge Koh recently held in addressing this issue:
>
> Although the Ninth Circuit has not spoken to the precise question, other circuits have held that *Landis* does not provide an alternative basis for a court to stay a case when a *Colorado River* stay is not merited. Granting a stay under the broader *Landis* test in such circumstances would undermine the narrow *Colorado River* doctrine and its instruction for courts to exercise their "virtually unflagging obligation" to exercise jurisdiction: "To permit a district court to rely solely on its inherent power to control its docket, when the effect of the district court's order is to accomplish the same result contemplated by *Colorado River*, would allow a court to bypass the rigorous test set out by the Supreme Court." *Cottrell v. Duke*, 737 F.3d 1238, 1249 (8th Cir. 2013). The Seventh Circuit has also held that "the pendency of a parallel state court suit" is not a sufficient basis for a federal court to

> stay a case, and that *Colorado River* instead
> supplies the applicable test. *Evans Transp.
> Co. v. Scullin Steel Co.*, 693 F.2d 715, 717
> (7th Cir. 1982).

*AIIRAM LLC*, 2019 WL 3779185, at *6. This court finds that reasoning persuasive. Because Defendants ask for a stay in favor of an arbitration that was ordered by a state court and that will be confirmed in state court, *see* ECF No. 33-7, PageID # 242, *Colorado River* controls, *Landis* is simply inapplicable.

### 2. **Neither dismissal nor a stay is justified under *Colorado River*.**

When deciding whether to dismiss or stay a case under *Colorado River*, courts must consider:

> (1) which court first assumed jurisdiction
> over any property at stake; (2) the
> inconvenience of the federal forum; (3) the
> desire to avoid piecemeal litigation; (4) the
> order in which the forums obtained
> jurisdiction; (5) whether federal law or
> state law provides the rule of decision on
> the merits; (6) whether the state court
> proceedings can adequately protect the rights
> of the federal litigants; (7) the desire to
> avoid forum shopping; and (8) whether the
> state court proceedings will resolve all
> issues before the federal court.

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011). Ultimately, "courts may refrain from deciding an action for damages only in 'exceptional' cases, and only 'the clearest of justifications' support dismissal or stay." *Id.* at 978. This is not such a case.

The court notes that Defendants seek either a dismissal or stay of this action. Under *Colorado River,* courts can either dismiss the case or issue a stay. However, the choice between the two does not affect the governing standard. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 480 U.S. 1, 28 (1983) ("[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal.").

Several of the *Colorado River* factors are easy to set aside. The first (which court first assumed jurisdiction over the property at stake), second (the inconvenience of the federal forum), and seventh (avoidance of forum shopping) factors are irrelevant here. The fourth factor examines the order in which the forums obtained jurisdiction. The arbitration did begin before this action was filed, but it appears that the arbitration has advanced very little. And while Suzuki's claims are state-law claims (the fifth factor), because this action involves "routine issues of state law . . . [that] factor does not weigh against jurisdiction." *R.R. St.*, 656 F.3d at 980 (quotations omitted).

The remaining three factors warrant further discussion. The third factor involves the avoidance of piecemeal litigation. While having the arbitration and this action proceed concurrently would indeed involve piecemeal litigation, "[a] general preference for avoiding piecemeal litigation is insufficient to

warrant abstention." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017). That is because "[a]ny case in which *Colorado River* is implicated will inevitably involve the possibility of" conflicting results or piecemeal litigation. *Id.* (quotations omitted). This factor only permits dismissal or a stay if there is a "special concern counseling in favor of federal abstention." *Id.* ("The district court misconstrued the piecemeal litigation factor because it failed to identify any special concern counseling in favor of federal abstention, such as a clear federal policy of avoiding piecemeal adjudication of water rights . . . ."); *see also United States v. Morros*, 268 F.3d 695, 706-07 (9th Cir. 2001). Defendants do not identify any special concerns here. This factor, therefore, does not provide strong support for abstention.

Under the sixth factor, "[a] district court may not stay or dismiss the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants. For example, if there is a possibility that the parties will not be able to raise their claims in the state proceeding, a stay or dismissal is inappropriate." *R.R. St.*, 656 F.3d at 981. Here, given the state court's order, Suzuki cannot raise his affirmative malpractice claims in the state arbitration proceeding. Consequently, this factor weighs against dismissal

or abstention.  Suzuki should not have to wait until the arbitration concludes to pursue his malpractice claims.

Under the eighth factor, "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes a *Colorado River* stay or dismissal."  *R.R. St.*, 656 F.3d at 982 (quotations omitted).  Such doubts exist here.

Defendants appear to contend that the arbitration might issues raised by Suzuki's malpractice claim (Count I).  *See, e.g.*, ECF No. 41, PageID # 430-31.  But even if the arbitration does have preclusive effect on selected issues, *see Dorrance v. Lee*, 90 Haw. 143, 146, 976 P.2d 904, 907 (1999), the arbitration might not resolve the entire case.

In the arbitration, Suzuki can argue that he should be allowed an offset against any fees he owes given Defendants' malpractice.  If the arbitrator concludes that Defendants committed no malpractice, and if that determination has preclusive effect, the arbitrator's decision might end this case.

But it is far from clear that the arbitrator's decision will necessarily moot out this case.  In the arbitration Defendants are seeking $568,076.42 in unpaid fees.  *See* ECF No. 33-1, PageID # 149.  In this action, by contrast, Suzuki seeks $1.5 million in malpractice damages.  *See* ECF No. 39, PageID # 275.  Suppose the arbitrator rules that Defendants did indeed

14

commit malpractice and that Suzuki is entitled to an offset worth at least $568,076.42 and so owes none of the fees in issue in the arbitration. The arbitrator would have no reason to determine whether Suzuki suffered damages exceeding the amount of fees in issue. Therefore, even if the arbitrator's determination that Defendants committed malpractice had preclusive effect here, this court would still have to quantify Suzuki's damages.

Moreover, this court is not persuaded by Defendants' argument that the fee claims being arbitrated are echoed in Defendants' claim for breach of contract (Count II) in this federal case. Defendants argue that Count II concerns the "fee dispute," and the arbitration also concerns the "fee dispute," making Count II and the arbitration duplicative. But Count II appears to seek recovery of fees Suzuki has *already paid*, whereas the arbitration is solely concerned with whether Suzuki will have to pay certain *outstanding* fees. If this distinction is valid, the damages Suzuki seeks to recover in Count II will not be addressed at all in the arbitration.

The eighth factor examines whether the arbitration will resolve all issues before this court. The Supreme Court has explained that "the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993)(quoting *Moses H. Cone*, 460

U.S. at 28). As noted earlier in this order, this court has no assurance that it will have nothing substantive to do once the arbitration proceeding concludes. Accordingly, the eighth factor weighs against abstention.

In sum, only the third *Colorado River* factor (avoidance of piecemeal litigation) provides any support for abstention, and the sixth and eighth factors (whether the arbitration can adequately protect the litigants' rights and whether the arbitration will resolve all issues before the federal court) support this court's exercise of jurisdiction. This is not the exceptional case in which *Colorado River* abstention is warranted.

### C.   9 U.S.C. § 3 does not apply.

Defendants argue that a stay is warranted under 9 U.S.C. § 3, which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The court questions how Defendants can argue that a stay is available under § 3 when Defendants do not consider any of Suzuki's claims referable to arbitration. That assertion is precluded by the Ninth Circuit's decision in *Western Security Bank v. Schneider Ltd. Partnership*, 816 F.3d 587 (9th Cir. 2016).

The defendants in *Western Security Bank* filed a motion in district court to stay the federal case in favor of a concurrent arbitration. *Id.* at 588. The defendants "styled their motion, in part, as one brought pursuant to [9 U.S.C. § 3]." *Id.* When the district court denied the motion, the defendants filed an interlocutory appeal. *Id.*

The Ninth Circuit's opinion focused on the issue of whether it had appellate jurisdiction under 9 U.S.C. § 16(a). *Id.* Section 16(a) gives the appellate courts jurisdiction over interlocutory appeals from the denial of a motion to stay brought under § 3. Thus, the Ninth Circuit had to decide whether the defendants' motion to stay was "mis-captioned in an attempt to take advantage of § 16(a)." *Id.* at 590. The defendants argued that their motion properly invoked § 3 because the issues raised in the arbitration were the same as the issues presented in the federal case. *Id.*

> The Ninth Circuit disagreed:
>
> The Wyoming Doctors repeatedly made clear they do *not* seek to compel Western Security to arbitrate any claims it has brought against them in the district court. Although the Wyoming Doctors argued, under principles of state contract law, that Western Security is bound by the arbitration agreement between the Wyoming Doctors and Meridian, an issue we do not decide, they clarified that these arguments were meant to illustrate "how they could be irreparably harmed absent a stay because issue preclusion/collateral estoppel could lead to conflicting results" in the arbitration and litigation and that they "are

> intent on resolving the common issues *first* in arbitration."  In so doing, the Wyoming Doctors made clear that they ultimately seek a judicial remedy from the district court after completion of the separate arbitration, rather than an exclusive remedy against Western Security through arbitration. Because the essence of the Wyoming Doctors' stay motion was not for relief under the FAA, no § 16(a) appellate jurisdiction exists over the denial of that motion.  We lack jurisdiction to review, on an interlocutory basis, an ordinary exercise of discretion to deny a stay.

*Id.* (emphasis in original).  In other words, the Ninth Circuit held that the defendants' motion to stay *could not even be construed as a § 3 motion* because the defendants did not argue that the plaintiff's claims were referable to arbitration.

*Western Security Bank* is controlling.  Defendants argue that § 3 applies because the arbitration ordered by the state court involves many of the same issues as this action, and, if resolved first, it could have preclusive effect.  That is the same argument rejected by the Ninth Circuit in *Western Security Bank*.  Because Defendants do not argue that Suzuki's claims are referable to arbitration, § 3 is not a proper vehicle for Defendants' motion.  *See Western Security Bank*, 816 F.3d at 590.

18

**IV.     CONCLUSION.**

Defendants' motion to dismiss, or, in the alternative, to stay the case pending arbitration is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 9, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Suzuki v. Bickerton Law Group, LLLP*, Civ. No. 19-00627 SOM-WRP; ORDER DENYING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY CASE PENDING ARBITRATION